COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-179-CR
 
  
KEVIN BRYAN POLLARD                                                        APPELLANT
A/K/A KEVIN B. POLLARD
   
V.
   
THE STATE OF TEXAS                                                                  STATE
  
  
------------
 
FROM THE 213TH DISTRICT COURT 
OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellant 
Kevin Bryan Pollard a/k/a Kevin B. Pollard was convicted by a jury of three 
counts of burglary of a habitation, and he was sentenced to twenty, twenty, and 
forty-five years’ confinement for each offense respectively, to be served 
concurrently. The parties are familiar with the facts of this case, and the 
controlling law is well-settled. We will affirm.
        In 
his sole point, Appellant challenges the factual sufficiency of the evidence 
with respect to his identity as S.L.’s assailant.[2]  
Specifically, Appellant argues that S.L.’s “mis-identification of the 
ethnicity of his robber and his failure to mention any tattoos” on 
Appellant’s forearms, “when coupled with the total absence of any physical 
evidence (such as fingerprints, recovered stolen items, or a weapon), renders 
proof of guilt so obviously weak as to undermine confidence in the jury’s 
determination.”[3]
        We 
have carefully examined all of the evidence in the record concerning 
Appellant’s alleged burglarizing of S.L.’s home in a neutral light, favoring 
neither party.[4]  On January 9, 2003, 
fifteen-year-old S.L. came home from school and discovered a burglar inside his 
parents’ home. S.L. identified Appellant at trial as the person who was in his 
house on January 9, 2003. S.L. testified that, when he saw the burglar, he tried 
to run away, but the burglar caught him, dragged him by the back of his shirt 
into a bedroom, “popped [him] in the back of [his] head,” and began banging 
him into a wall.
        S.L. 
testified that he fought back but that the burglar kept grabbing him. At some 
point, the attacker pulled out a blade and slashed S.L.’s arm and stomach. S.L. 
testified that he sat down because he was tired from fighting and that he looked 
at the burglar. According to S.L., the burglar “looked at me and said, ‘You 
say something, motherfucker? Now watch”; and he turned and ran out the back 
door. S.L. stated that the burglar took two rings and two pairs of earrings that 
belonged to his mother.
        On 
appeal, Appellant argues that S.L. described his assailant to the police as 
Hispanic, light complected, green-eyed, and stocky; whereas, Appellant is not 
Hispanic, had blond hair, is blue-eyed, stands 5’ 7”, and weighs 140 
pounds.  S.L. testified that he went to a neighbor’s house across the 
street and called the police after the attacker left.  When the police 
arrived, S.L. told the police that his attacker was either a “white or 
Mexican” male who was wearing blue jeans and a red shirt.  During trial, 
S.L. acknowledged that Appellant is not Hispanic.  S.L. stated that he 
initially thought the burglar might be Hispanic because his eyes “were kind of 
like green” and his own father, who is Hispanic, has green eyes.  S.L. 
also testified that he thought the burglar might be Hispanic because he had his 
hair back and stuttered as he spoke.
        S.L. 
testified that, during the attack, Appellant was wearing Polo boots, but that he 
was not wearing any shoes. S.L. agreed on cross-examination that Appellant’s 
hair color at trial appeared to be “kind of blondish brown.”  On 
redirect examination of S.L., the State asked, “Is there any doubt in your 
mind that the man you picked out in court today is the same man that burglarized 
your house?” S.L. responded, “That’s the same man.”
        Officer 
R. J. Miller testified that he came to S.L.’s house in response to the 911 
call. Officer Miller spoke with S.L. for about ten to fifteen minutes, and S.L. 
described the burglar as “a Hispanic male of light complexion, short and 
stocky,” who was wearing blue jeans and a red shirt. When cross-examined, 
Officer Miller testified that he did not ask S.L. to describe the color of the 
burglar’s eyes. Officer Miller also stated that S.L. did not tell him whether 
his assailant had any tattoos.
        Two 
days after the attack, while riding in the car with his mother, S.L. saw 
Appellant walking up the street. When S.L. saw Appellant’s face, he knew that 
Appellant was the same man who had attacked him. S.L. testified that 
“[Appellant] kept on walking and glanced back to see if we were following 
him.” S.L. and his mother followed Appellant to a mechanic’s shop, but they 
did not see him again. Later that afternoon, S.L. and his father saw Appellant 
walking down Ayers Street, and they called 911. S.L. testified that Appellant 
looked “[s]uspicious” and “kept looking back like if he was worried.”
        Detective 
Cynthia O’Neil testified that she prepared the arrest warrant for Appellant 
and typed the “Wanted Person Data Input Sheet.” It described Appellant 
“[a]s a white male, five-seven, 140, blue eyes, blond hair, complexion 
light.” Detective O’Neil was asked whether that description fits “a short, 
stocky Hispanic male,” and she responded, “I can’t make a determination as 
to what a Hispanic male looks like.”
        Corporal 
Matthew Barron testified that on January 11, he spoke with S.L. and observed 
Appellant near a Carnival Food Store on Ayers Street. Corporal Barron testified 
that Appellant “appeared uneasy, . . . appeared to be glancing back looking at 
the police presence,” and immediately started moving away from the police as 
they approached. Officer R. B. Owen testified that he assisted Corporal 
Barron.  Officer Owen spoke with S.L., who identified Appellant as the 
person who had burglarized his home.  According to Officer Owen, as he 
approached Appellant, “he looked back at me, turned around and started moving 
a lot quicker away from where we were going.”  He added, “I thought he 
was trying to avoid me.”  The officers took Appellant into custody.
        Appellant 
called his mother, Linda Pollard, to testify. Linda Pollard testified that 
Appellant has tattoos on both of his arms, describing them as “large” and 
covering the “bottom part of his arm[s].”  She testified that Appellant 
has “[t]he name of his children” on his arms and the name “Kevin” on his 
hand.  During direct examination, she was asked whether she recalled being 
with Appellant on January 9, 2003.  She replied, “I am not 100 percent, 
sure, but yeah.”  Linda Pollard agreed on cross-examination that she did 
not “want to see [her] son get in major trouble.”  After hearing and 
considering all of the evidence and testimony presented, the jury found 
Appellant guilty on all three counts of burglary of a habitation.
        Appellant 
points out that S.L. never mentioned seeing his tattoos.  On 
cross-examination, S.L. testified that the burglar was wearing a short sleeve 
T-shirt and that he was not wearing a jacket. He testified, however, that he 
could not see Appellant’s hands and arms because “[he] was just swinging 
trying to keep [Appellant] away.”  When asked whether he had described 
his attacker as “short and stocky,” S.L. said that he told the police his 
attacker was “a little taller than me and stocky.”
        Appellant 
directs us to Ward v. State, in which the Waco Court of Appeals reversed 
an aggravated robbery conviction on factual insufficiency grounds as to 
identity.[5]  However, in Ward, the 
eyewitness testimony connecting the appellant to the aggravated robbery was 
outweighed by evidence, including testimony from four witnesses who worked with 
the appellant, that tended to disprove the appellant’s involvement in the 
robbery.[6] Here, there is no such evidence.  
Rather, S.L. identified Appellant as the burglar and testified as to why he 
initially thought Appellant might be Hispanic and why he did not see or 
mention Appellant’s tattoos.
        We 
are cognizant of the fact finder’s role and unique position, a position that 
we are unable to occupy.[7]  As the fact finder 
in this case, the jury judged the credibility of the witnesses and could have 
“believe[d] all, some, or none of the testimony.”[8]  
Further, 
 
[a] factual sufficiency 
analysis can consider only those few matters bearing on credibility that can be 
fully determined from a cold appellate record.  Such an approach 
occasionally permits some credibility assessment but usually requires deference 
to the jury’s conclusion based on matters beyond the scope of the appellate 
court’s legitimate concern.  Unless the available record clearly reveals 
a different result is appropriate, an appellate court must defer to the jury’s 
determination concerning what weight to give contradictory testimonial evidence 
because resolution often turns on an evaluation of credibility and demeanor, and 
those jurors were in attendance when the testimony was delivered.[9]
 
 
In this case, the jury, as the 
fact finder, determined the weight and credibility to be given to each 
witness’s testimony and ultimately found that Appellant was the person who 
burglarized S.L.’s home and attacked him in the process.[10]  
Because the available record does not clearly reveal that a different result is 
appropriate, we must defer to the jury’s determination.[11]
        Upon 
reviewing the evidence under the applicable standard of review,[12] giving due deference to the fact finder’s 
determinations, we conclude that the evidence presented at trial is factually 
sufficient to establish that Appellant burglarized S.L.’s home.
        We 
therefore overrule Appellant’s sole point and affirm the trial court’s 
judgment.
  
 
                                                          ANNE 
GARDNER
                                                          JUSTICE
   
 
PANEL B:   HOLMAN, 
GARDNER, and WALKER, JJ.
 
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: August 19, 2004


NOTES
1.  See 
Tex. R. App. P. 47.4.
2.  The 
standard of review is found in Zuniga v. State, No. 539-02, 2004 WL 
840786, at *4, 7, 9 (Tex. Crim. App. Apr. 21, 2004) (clarifying factual 
sufficiency standard). See also Johnson v. State, 23 S.W.3d 1, 7 (Tex. 
Crim. App. 2000) (same).
3.  See 
Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003) (stating that a 
proper factual sufficiency review must include a discussion of the most 
important and relevant evidence that supports the appellant’s complaint on 
appeal).
4.  See 
Zuniga, 2004 WL 840786, at *4; Johnson, 23 S.W.3d at 7.
5.  48 
S.W.3d 383, 390-91 (Tex. App.—Waco 2001, pet. ref’d).
6.  Id.
7.  See 
Johnson, 23 S.W.3d at 9; Ward, 48 S.W.3d at 392 (Gray, J., 
dissenting).
8.  Chambers 
v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).
9.  Johnson, 
23 S.W.3d at 8 (citation & footnote omitted).
10.  See 
id. at 7.
11.  See 
id. at 8.
12.  See 
Zuniga, 2004 WL 840786, at *4, 7, 9; Johnson, 23 S.W.3d at 8-9.